UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

AIRPORT FAST PARK-AUSTIN, L.P.,          Case No. 1:15-cv-245
      Plaintiff,                       Beckwith, J.
                                     Litkovitz, M.J.

      vs.

JOHN HANCOCK LIFE INSURANCE
COMPANY,                         **ORDER**
         Defendant.

This case is before the Court on briefs submitted by the parties, Airport Fast Park-Austin, L.P. (AFP) and John Hancock Life Insurance Company (JHLIC), following an informal discovery conference held on August 26, 2016.   Also before the Court for its *in camera* review are plaintiff AFP's Redacted Document Log and Privilege Log.   At issue is whether the attorney-client privilege applicable to AFP's communications with its outside counsel, Miguel Chavez, regarding the loan transaction at issue applies equally to attorney communications that AFP disclosed to Parking Company of America (PCA) employees Toni Kennett and Manuel Chavez, III, and communications between counsel for AFP and these same PCA employees.[1]   AFP alleges the communications are protected by the attorney-client privilege because AFP and PCA are affiliated companies entitled to the same protection with regard to attorney-client communications related to the loan transaction.   Defendant JHLIC asserts that communications between AFP and its outside counsel that AFP disclosed to PCA employees, and communications exchanged between AFP's outside counsel and PCA employees, are not protected.   Defendant argues that AFP, a single asset

---

[1] Defendant alleges that attorney Michael Anderson, who exchanged communications related to the loan transaction, is also an employee of PCA.   Plaintiff denies that Mr. Anderson is an employee of PCA and has introduced evidence showing he is a minority owner of AFP.   (AFP Brief, Exh. 1, Timothy Malik Depo., Exh. 19, p. 4; *see also* Exh. 2, Martin Chavez Depo., p. 35).   As a minority owner of AFP, Mr. Anderson's communications with outside counsel for AFP related to the loan transaction at issue are indisputably protected by the attorney-client privilege.

entity[2], and PCA are not affiliated companies and that AFP waived the attorney-client privilege

when it disclosed protected communications regarding the loan transaction at issue to employees of

PCA.

State law governs AFP's claim of attorney-client privilege in this diversity action.

*Travelers Cas. and Sur. Co. v. Excess Ins. Co. Ltd.*, 197 F.R.D. 601, 605 (S.D. Ohio 2000) (citing

Fed. R. Evid. 501; *Guy v. United Healthcare Corp.,* 154 F.R.D. 172, 177 (S.D. Ohio 1993)).   The

attorney-client privilege in Ohio is governed by Ohio Rev. Code § 2317.02(A) and, in situations

where the statute does not apply, by common law.   *State ex rel. Leslie v. Ohio Hous. Fin. Agency,*

824 N.E.2d 990, 994 (Ohio 2005).   Under Ohio law, "[c]ommunications made by a client to his

attorney with a view to professional advice or assistance are privileged; and courts will not require

nor permit them to be divulged by the attorney, without the consent of his client, whose privilege it

is."  *Travelers Cas. and Sur. Co.*, 197 F.R.D. at 606 (quoting *Spitzer v. Stillings*, 142 N.E. 365, 367

(Ohio 1924) (citation omitted)).

A waiver of the attorney-client privilege may be found when "a client's disclosure to a third

party of communications made pursuant to the attorney-client privilege breaches the confidentiality

underlying the privilege."  *Id.* (quoting *State v. Post*, 513 N.E.2d 754, 761 (Ohio 1987)).   The Ohio

Supreme Court explained the rationale underlying this principle in *Post*:

> Waiver of the attorney-client privilege by disclosure to third parties is premised on
> the principle that [t]he privilege assumes, of course, that the communications are
> made with the intention of confidentiality.   The reason for prohibiting disclosure . . .
> ceases when the client does not appear to have been desirous of secrecy.   The
> moment confidence ceases, . . . privilege ceases. . . .
>
> Thus, it has been held that [c]ommunications divulged to strangers or outsiders can
> scarcely be considered confidential communication between attorney and client, and
> are not protected by the attorney-client privilege. . . .

_____

[2] *See* AFP Brief, Exh. 4, Manuel Chavez Depo., p. 7.

*Post*, 513 N.E.2d 754, 760-61 (internal quotations and citations omitted).

In the corporate context, it is well-settled that the "attorney-client privilege is not waived merely because the communications involved extend across corporate structures to encompass parent corporations, subsidiary corporations, and affiliated corporations." *Crabb v. KFC Nat. Management Co.*, No. 91-5474, 1992 WL 1321, at *3 (6th Cir. 1992) (citing *United States v. AT & T*, 86 F.R.D. 603, 616 (D.D.C. 1979) (stating it is the clear holding of cases that "a corporate 'client' includes not only the corporation by whom the attorney is employed or retained, but also parent, subsidiary and affiliate corporations."); *Roberts v. Carrier Corp.*, 107 F.R.D. 678, 687-88 (N.D. Ind. 1985) ("[I]f a corporation with a legal interest in an attorney-client communication relays it to another related corporation, the attorney-client privilege is not thereby waived. . . .  The third party corporation need not be a party to any anticipated or pending litigation; it may share a community of interest (so as to keep communications privileged) if it shares an identical, and not merely similar, legal interest as the client with respect to the subject matter of the communication between the client and its attorney.") (internal citations and footnote omitted); *Duplan Corp. v. Deering Milliken, Inc.*, 397 F. Supp. 1146, 1184-85 (D. S.C. 1974) ("Although an interest of a third-party corporation from a commercial standpoint would not establish a sufficient community of interest, the fact that the communications are among formally different corporate entities which are under common ownership or control leads this court to treat such inter-related corporate communications in the same manner as intra-corporate communications."); *Admiral Ins. Co. v. United States Dist. Ct. for*

*the Dist. of Arizona,* 881 F.2d 1486, 1493 n.6 (9th Cir. 1989) (acknowledging that the attorney-client

privilege is not waived across parent-subsidiary relationship)).[3]

      Plaintiff AFP relies on the Sixth Circuit decision in *Crabb*, 1992 WL 1321, to argue that the

attorney-client privilege applicable to its communications with counsel applies equally to attorney

communications shared with the employees of PCA and with Mr. Anderson, an attorney and

minority owner of plaintiff.   In support of its contrary position that AFP waived its attorney-client

privilege by sharing communications with employees of PCA, JHLIC relies on the Ohio Court of

Appeals decision in *MA Equip. Leasing I, L.L.C. v. Tilton*, 980 N.E.2d 1072 (Ohio App. 10 Dist.

2012).   The Court in *MA Equip. Leasing* acknowledged that application of the attorney-client

privilege in the corporate context must be determined on a case-by-case basis.   *Id.* at 1081 (citing

*Upjohn Co. v. U.S.*, 449 U.S. 383, 396 (1981)).   For the reasons explained below, the Court finds

that the holding of *MA Equip. Leasing* does not apply here and that the situation presented in this

case is more akin to the scenario presented by *Crabb*.

      The Court in *MA Equip. Leasing* noted that courts often apply exceptions to the rule that

disclosure of information to third parties waives the attorney-client privilege "when

communications are shared with a corporate parent, subsidiary or affiliate."   *Id*. at 1081.   The

Court set forth the three most common rationales for declining to construe the sharing of

communications within a corporate family as a waiver of the attorney-client privilege: "(1) the

members of the corporate family comprise a single client; (2) the members of the corporate family

are joint clients; and (3) the members of the corporate family are part of a shared community of

---

[3]   There are no material differences between Ohio's attorney-client privilege and the federal attorney-client privilege. *MA Equip. Leasing I, L.L.C. v. Tilton*, 980 N.E.2d 1072, 1079-80 (Ohio App. 10 Dist. 2012) (citing *Guy,* 154 F.R.D. 172, 177 n.3; *Inhalation Plastics, Inc. v. Medex Cardio-Pulmonary, Inc.,* No. 2:07-cv-116, 2012 WL 3731483 (S.D. Ohio Aug. 28, 2012)).

interest." *Id.* at 1081-82 (citing *In re Teleglobe Communications Corp.*, 493 F.3d 345, 369-70 (3rd Cir. 2007)).   The Court decided that the appellants had not established that an exception to the disclosure rule applied in the case before it.   *Id.* at 1084.   The Court found that appellants and their affiliate, a non-party, did not constitute a single client and the first rationale was therefore inapplicable.   *Id.*   The Court acknowledged the potential applicability of the attorney-client privilege under the second rationale in the event appellants were able to establish the existence of a joint-client relationship with their affiliate.   *Id.*   However, the Court determined that rationale likewise did not apply because "[u]nlike the vast majority of cases that treat parent, subsidiary, and/or affiliate entities as joint clients as a matter of course," the affiliates in question "were neither jointly represented by in-house counsel nor jointly represented by common outside counsel."   *Id.* at 1084.   Nor had appellants shown that they shared a "common interest" with their affiliate, which was a requirement the trial court imposed for assertion of the attorney-client privilege under the joint-client rationale.   *Id.* at 1086.   Because there was no evidence that counsel for the non-party affiliate had performed work on behalf of the appellants, the Court found that the appellants could not assert the attorney-client privilege as to their communications with counsel for the non-party affiliate.   *Id.*

In reaching its decision, the Court in *MA Equip. Leasing* distinguished the issue that confronted the Courts in *Crabb* and *Roberts* by stating the question before it was not "whether a client waived its right to assert attorney-client privilege by disclosing a communication to a third party[.]"   *Id.*   Rather, the issue was whether the same counsel performed work for the corporate entities involved and whether the entities shared a common interest.   *Id.*   In contrast, *Crabb* and *Roberts* involved the disclosure of privileged documents to a corporate affiliate and to a sister subsidiary company with an identical legal interest, respectively, situations in which a waiver of the

5

attorney-client privilege clearly did not occur. *See Crabb*, 1992 WL 1321, at *3; *Roberts*, 107 F.R.D. at 687-88. The issue addressed in *Crabb* and *Roberts* is the same issue presented here. The communications AFP seeks to protect from disclosure are privileged communications AFP sent to PCA, which is an affiliated entity by virtue of the entities' common ownership and the overlap in their operations, or that the affiliates' joint counsel exchanged with PCA employees. *Cf. Ohio Valley Coal Co. v. Pleasant Ridge Synfuels, LLC*, 54 F. App'x 610, 614 (6th Cir. 2002) (upholding a finding that companies were affiliates where one individual served as the CEO of one company and owned and controlled another company).

"Chavez Properties" is the name "loosely use[d] to describe a family of affiliated entities," including AFP and PCA. (AFP Brief, Exh. 3, Manuel Chavez, III Depo., p. 13). The vast majority of Chavez Properties are single-asset entities that are limited liability companies which own parking real estate assets. (*Id*.). PCA is a management company which manages the vast majority of the affiliates of Chavez Properties. (*Id*., p. 16). Manuel Chavez, Robert Chavez and Martin Chavez are the common owners of both Austin Airport Fast Park, LLC, which is the managing partner of AFP, and of PCA, the entity which manages AFP's business. (AFP Brief, Exh. 1, Malik Depo., Exh. 19, p. 4; Exh. 2, Martin Chavez Depo., pp. 35-36; Exh. 3, Manuel Chavez, III Depo., p. 16[4]; Exh. 4, Manuel Chavez Depo., pp. 7-8; Exh. 5, Robert Chavez Depo., p. 6). Toni Kennett and Manuel Chavez, III are employees of the management company, PCA, and performed services on behalf of AFP relating to the loan transaction at issue. (AFP Brief, Exh. 2, Martin Chavez Depo., p. 35-36; Exh. 3, Manuel Chavez, III Depo., pp. 15-16; Exh. 1, Timothy Malik Depo., Exhs. 17, 35). When Toni Kennett performed services on behalf of AFP, she did so at the direction of Manuel,

---

[4] Although he is an employee of PCA, Manuel Chavez, III was designated and testified as AFP's corporate representative for purposes of a deposition pursuant to Fed. R. Civ. P. 30(b)(6). (AFP Brief, Exh. 3; *see* pp. 15-16).

Robert, or Martin Chavez, all of whom are owners of APF, or Manuel Chavez, III.   (AFP Brief,

Exh. 3, Manuel Chavez, III Depo., p. 16).   AFP and PCA, though separate entities, share a common

attorney and common legal interests.   There is nothing in the documentation before the Court or

about the parties' relationship that suggests AFP waived the confidentiality of its privileged

communications when outside counsel for AFP communicated with employees of PCA on the

JHLIC loan transaction or when AFP copied employees of PCA on emails it sent to the parties' joint

counsel.   Accordingly, the same result reached in *Crabb* and *Roberts* is warranted under the facts of

this case.

    The Court finds that AFP did not waive the attorney-client privilege by disclosing to

employees of PCA protected communications that AFP exchanged with its outside counsel, Miguel

Chavez, regarding the loan transaction at issue.   Plaintiff AFP is entitled to assert the

attorney-client privilege as to such communications as well as to communications related to the loan

transaction that were exchanged between AFP's outside counsel and employees of PCA.

    **IT IS SO ORDERED.**

Date: _9/15/16_

                                              Karen L. Litkovitz
                                              United States Magistrate Judge

7